UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

JOHN M HEINEKE,

          Plaintiff,

    v.

SANTA CLARA UNIVERSITY, et al.,

          Defendants.

Case No. 17-CV-05285-LHK

**ORDER GRANTING IN PART AND DENYING IN PART SPECIAL MOTION TO STRIKE AND GRANTING MOTION TO DISMISS**

Re: Dkt. Nos. 27, 45

      Before the Court are Defendants Santa Clara University and Jane Doe's motion to dismiss the complaint and special motion to strike the complaint under California's statute barring strategic lawsuits against public participation (the "anti-SLAPP statute"). ECF Nos. 27, 45. Having considered the submissions of the parties, the relevant law, and the record in this case, the Court GRANTS IN PART and DENIES IN PART Defendants' special motion to strike. The Court GRANTS Defendants' motion to dismiss the complaint in its entirety. In this Order, the Court also details its reasoning for previously granting Defendants' motion to allow Jane Doe to proceed under pseudonym. *See* ECF No. 54.

1

Case No. 17-CV-05285-LHK
ORDER GRANTING IN PART AND DENYING IN PART SPECIAL MOTION TO STRIKE AND GRANTING MOTION TO DISMISS

United States District Court
Northern District of California

## I.       BACKGROUND

### A. Factual Background[1]

Plaintiff John Heineke ("Plaintiff") is a 79-year-old tenured professor of economics at Santa Clara University ("SCU").  ECF No. 74 ("Compl.") ¶¶ 1, 9.  In 2015, Jane Doe ("Doe"), then a student of his, accused Plaintiff of sexual harassment and filed a complaint with SCU's Office of EEO & Title IX.  Compl. ¶¶ 28, 32.  Doe chose not to pursue the complaint at that time.  Compl. ¶ 33.  Plaintiff denies the allegations and asserts that Doe made the allegations as a face-saving way to withdraw from her commitment to serve as Plaintiff's teaching assistant.  Compl. ¶ 34.

At some unspecified time, another student ("Student A") of Plaintiff's filed a complaint accusing him of sexual harassment.  Compl. ¶ 36.  SCU hired a third-party investigator to investigate the charges.  The investigator found that a preponderance of the evidence did not support Student A's allegations of sexual harassment.  Compl. ¶ 37.  In the course of the investigation into Student A's claims, however, the investigator learned of Doe's complaint and interviewed her.  Compl. ¶¶ 37-38.  The investigator then opened a formal investigation into Doe's complaint.  Compl. ¶¶ 38-39.  Plaintiff asserts that Student A made her allegations because she was upset about a low grade she received in Plaintiff's class.  Plaintiff asserts that Doe agreed to resurrect her allegations to help Student A, with whom Plaintiff says Doe is friends.  Compl. ¶ 36; Heineke Decl. ¶¶ 7-8.

Following an investigation that included interviewing Doe and a number of witnesses, the investigator issued a report finding that Plaintiff had violated SCU's Gender-Based Discrimination

---

[1] Given the already voluminous filings and rulings in this case, the Court is familiar with the facts of this case at a much greater level of detail than the facts recounted in this Section suggest. However, in considering a motion to dismiss, the Court is confined to the allegations in the complaint and judicially noticeable facts.  *See Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995); *Bagley v. City of Sunnyvale*, No. 16-CV-02250-LHK, 2017 WL 344998, at *18 n.4 (N.D. Cal. Jan. 24, 2017).  Because more factual detail is not required to decide the instant motion to dismiss, the Court confines its factual summary to those facts alleged in the Complaint.  Where necessary and appropriate, additional facts are included in the Court's analysis of the anti-SLAPP special motion to strike.

and Sexual Misconduct Policy as well as Policy 311 of the Staff Policy Manual. Compl. ¶ 40. Plaintiff contends that the investigation was biased against him. *See, e.g.*, Compl. ¶¶ 39-40.

On August 20, 2017, SCU threatened to terminate Plaintiff based on Provost Dennis Jacobs's acceptance of the investigation's findings. Compl. ¶ 45. Plaintiff contends that these decisions were influenced by SCU's general counsel's bias against Plaintiff, as well as SCU Business School's desire to save money. Heineke Decl. ¶¶ 30-31.

SCU suspended Plaintiff pending the resolution of Plaintiff's internal appeal of Jacobs's decision to SCU's president. Compl. ¶ 46. Plaintiff contends that news of his suspension quickly spread around campus. Compl. ¶ 46. Upon information and belief, Plaintiff alleges that SCU employees and students have publicly disclosed Doe's allegations of sexual harassment or the fact that Plaintiff was suspended for sexual harassment. Compl. ¶ 48.

Plaintiff contends that as a result of Defendants' actions, he has suffered mental anguish, loss of sleep, loss of appetite, headaches, loss of companionship, loss of reputation, and loss of career, as well as a range of monetary damages. Compl. ¶¶ 63-64.

**B. Procedural History**

On September 12, 2017, Plaintiff filed a complaint against Defendants SCU and a named former student alleging age discrimination, due process violations, wrongful termination, intentional infliction of emotional distress, negligent infliction of emotional distress, breach of contract, breach of the covenant of good faith and fair dealing, and defamation. Compl.

**1. First Emergency Motion for Temporary Restraining Order or Preliminary Injunction**

On September 13, 2017, while Plaintiff was suspended with pay pending resolution of his appeal to the SCU President of the Provost's decision to terminate Plaintiff, ECF No. 22 at 3, Plaintiff filed an emergency motion for a temporary restraining order or preliminary injunction, ECF No. 97. Also on September 13, 2017, the Court ordered SCU to respond to the emergency motion. ECF No. 16. SCU responded on September 14, 2017. ECF No. 68. On September 15, 2017, the Court denied Plaintiff's emergency motion because the Court found that Plaintiff's

3

alleged harms—reputational injury, loss of job, and emotional distress—were not irreparable under United States Supreme Court and Ninth Circuit precedent. *Id.*

On September 16, 2017, Plaintiff filed a notice of appeal to the Ninth Circuit Court of Appeals. ECF No. 23. Plaintiff sought a temporary restraining order from the Ninth Circuit, which the Ninth Circuit denied in a summary order. ECF No. 25. Briefing for the appeal concluded on December 4, 2017. *See* Docket No. 26 for Case No. 17-16876.

### 2. Defendants' Motion to Dismiss

On October 3, 2017, Defendants filed a motion to dismiss the Complaint in this Court. ECF No. 69 ("MTD"). On October 23, 2017, Defendants filed an administrative motion to allow the named defendant to proceed under pseudonym. ECF No. 71. On October 27, 2017, Plaintiff filed an opposition to the administrative motion to proceed under pseudonym. ECF No. 86. Also on October 27, 2017, Plaintiff filed an opposition to the motion to dismiss. ECF No. 34 ("MTD Opp."). On November 8, 2017, Plaintiff filed a reply in support of the motion to dismiss. ECF No. 70 ("MTD Reply").

### 3. Plaintiff's Second Motion for a Preliminary Injunction

On November 9, 2017, Plaintiff filed a second emergency motion for a preliminary injunction. ECF No. 37. The Court struck Plaintiff's motion for failure to comply with the Civil Local Rules governing page limits. ECF No. 38. On November 13, 2017, Plaintiff refiled the emergency motion for preliminary injunction based on his alleged imminent firing. Plaintiff's motion included a request for an evidentiary hearing. ECF No. 39. The Court directed SCU to file a response by November 15, 2017. ECF No. 40. The Court also set a hearing for the preliminary injunction motion for November 17, 2017 and ordered the parties to file statements related to Plaintiff's request for an evidentiary hearing. ECF No. 46.

SCU filed an opposition to the emergency motion for a preliminary injunction on November 15, 2017, ECF No. 75, and both parties filed statements outlining their positions on Plaintiff's requested evidentiary hearing, ECF Nos. 76, 90. Notably, Plaintiff envisioned calling at

least 18 witnesses and taking at least 12 hours of testimony.  ECF No. 90.

On November 16, 2017, the Court filed an order granting Plaintiff's request for an evidentiary hearing but limiting each side to two hours of witness testimony.  ECF No. 50.  The Court also granted Defendants' request for the named student-defendant to proceed under the pseudonym of "Jane Doe."  ECF No. 54.

Also on November 16, 2017, the Court ordered Plaintiff to file a declaration under penalty of perjury stating whether Plaintiff would file an appeal to the Faculty Judicial Board, as such an appeal would render Plaintiff's second request for a preliminary injunction premature.  ECF No. 51.  Plaintiff filed a declaration stating that he had decided to file an appeal to the Faculty Judicial Board.  ECF No. 92.  Accordingly, the Court denied Plaintiff's motion for a preliminary injunction because Plaintiff's status had not materially changed since his first motion for a restraining order or preliminary injunction.  ECF No. 55.  Specifically, Plaintiff remained on paid suspension pending exhaustion of his administrative remedies at SCU.  *Id.* at 2.  As such, the Court's reasoning in its Order denying the first motion for a temporary restraining order or preliminary injunction still applied.  *Id.*  The Court vacated the associated hearing.  *Id.*

### 4. Defendants' Anti-SLAPP Special Motion to Strike

On November 13, 2017, Defendants filed a special motion to strike the complaint.  ECF Nos. 72 ("anti-SLAPP Mot.").  The Court set a hearing for the special motion to strike on November 30, 2017.  On November 17, 2017, Plaintiff filed an opposition to the special motion to strike.  ECF No. 56 ("anti-SLAPP Opp.").  On November 22, 2017, Defendants filed a reply.  ECF No. 62 ("anti-SLAPP Reply").  On November 28, 2017, the Clerk issued a notice taking the motions under submission without oral argument pursuant to Civil Local Rule 7-1(b).  ECF No. 63. Also on November 28, 2017, Plaintiff filed an administrative motion for permission to file a sur-reply on the anti-SLAPP special motion to strike.  ECF No. 64.  The Court denied the administrative motion on November 29, 2017.  ECF No. 65.  On November 30, 2017, Plaintiff filed a second notice of appeal, this time challenging the Court's second order denying a

preliminary injunction, as well as the Court's order allowing Doe to proceed under pseudonym. ECF No. 67.

## II.    LEGAL STANDARD

### A.    Anti-SLAPP Motion to Strike Pursuant to Cal. Code Civ. Proc. § 425.16(b)(1)

California's anti-SLAPP statute states:

> A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.

Cal. Code Civ. Proc. § 425.16(b)(1). "To prevail on an anti-SLAPP motion to strike, the defendant must first make a prima facie showing that the plaintiff's suit arises from an act in furtherance of the defendant's rights of petition or free speech." *Jordan-Benel v. Universal City Studios, Inc.*, 859 F.3d 1184, 1188 (9th Cir. 2017); *see also Park v. Board of Trustees of Cal. State Univ.*, 393 P.3d 905, 907 (Cal. 2017) ("Initially, the moving defendant bears the burden of establishing that the challenged allegations or claims 'aris[e] from' protected activity in which the defendant has engaged."). "An 'act in furtherance' includes, among other things, 'conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.'" *Jordan-Benel*, 859 F.3d at 1188 (quoting Cal. Code Civ. Proc. § 425.16(e)(4)).

If the defendant establishes a prima facie case, the burden shifts to the plaintiff to show "a probability of prevailing on the challenged claim." *Id.*; *see also Park*, 393 P.3d at 907 ("If the defendant carries its burden, the plaintiff must then demonstrate its claims have at least minimal merit." (internal quotation marks omitted)). The plaintiff's burden at step two, however, is a relatively low one. *See Roberts v. McAfee, Inc.*, 660 F.3d 1156, 1163 (9th Cir. 2011) ("In the anti-SLAPP context, 'probability' is a low bar."); *Mindys Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 598 (9th Cir. 2010) ("[T]he second step of the anti-SLAPP inquiry is often called the 'minimal merit'

prong."). If the plaintiff cannot make this showing, the claim is stricken. *Jordan-Benel*, 859 F.3d at 1188. California's anti-SLAPP statute cannot be used to strike federal law claims. *Hilton v. Hallmark Cards*, 599 F.3d 894, 901 (9th Cir. 2010).

**B.      Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss an action for failure to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

However, a court need not accept as true allegations contradicted by judicially noticeable facts, *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000), and the "[C]ourt may look beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6) motion into one for summary judgment, *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995). Nor is the Court required to "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (quoting *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *accord Iqbal*, 556 U.S. at 678. Furthermore, "'a plaintiff may plead [him]self out of court'" if he "plead[s] facts which establish that he cannot prevail on his . . . claim." *Weisbuch v. County of Los Angeles*, 119 F.3d 778, 783 n.1 (9th Cir. 1997) (quoting *Warzon v. Drew*, 60 F.3d 1234, 1239 (7th Cir. 1995)).

## C.      Leave to Amend

Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely granted when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (ellipses omitted).  However, a court "may exercise its discretion to deny leave to amend due to 'undue delay, bad faith or dilatory motive on part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . , [and] futility of amendment.'"  *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892-93 (9th Cir. 2010) (alterations in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

## D.      Standard for Allowing Party to Proceed Under Pseudonym

"The normal presumption in litigation is that parties must use their real names." *Doe v. Kamehameha Sch./Bernice Pauahi Bishop Estate*, 596 F.3d 1036, 1042 (9th Cir. 2010).  However, Ninth Circuit precedent "allow[s] parties to use pseudonyms in the 'unusual case' when nondisclosure of the party's identity 'is necessary . . . to protect a person from harassment, injury, ridicule or personal embarrassment.'"  *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1067-68 (9th Cir. 2000) (quoting *United States v. Doe*, 655 F.2d 920, 922 n.1 (9th Cir. 1981)).  Courts balance "the need for anonymity against the general presumption that parties' identities are public information and the risk of unfairness to the opposing party." *Id.* at 1068 (citations omitted).  Courts applying this balancing test have recognized three situations allowing a plaintiff to proceed anonymously:

> (1) when identification creates a risk of retaliatory physical or mental harm; (2) when anonymity is necessary to preserve privacy in a matter of sensitive and highly personal nature; and (3) when the anonymous party is compelled to admit his or her intention to engage in illegal conduct, thereby risking criminal prosecution.

*Id.* (internal quotation marks and citations omitted).

## III.   DISCUSSION

The Court first addresses the instant special motion to strike and the instant motion to

dismiss.  Then, the Court provides its reasoning for previously ruling that Jane Doe may proceed under pseudonym.

## A.    Anti-SLAPP Special Motion to Strike

As an initial matter, Defendants first argued that all of Plaintiff's claims are subject to an anti-SLAPP special motion to strike, but Defendants conceded in their anti-SLAPP Reply that "a motion to strike under the anti-SLAPP statute may only be used to strike state law claims."  Anti-SLAPP Reply at 7.  As such, Plaintiff's § 1983 claim for due process violations and his ADEA claim, to the extent he has pled one,[2] are not subject to strike pursuant to the anti-SLAPP motion. Defendants' motion to strike is therefore DENIED as to the § 1983 claim and any ADEA claim.

With regard to the state law claims, Defendants bear the burden of establishing a prima facie case that the claims arise from protected speech.  Defendants contend that speech relating to sexual harassment complaints and investigations are protected by section (e)(2) of the anti-SLAPP statute, which protects "any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law."  Anti-SLAPP Mot. at 9-10 (quoting § 425.16(e)(2)). Alternatively, Defendants argue that Doe's complaint and SCU's investigation are protected by section (e)(4), which protects "any conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."  *Id.* at 10 (quoting § 425.16(e)(4)).

The California Supreme Court recently clarified when a claim "arises from protected activity" for the purpose of the anti-SLAPP statute.  *See Park*, 393 P.3d at 908.  In short, the California Supreme Court held that "a claim is not subject to a motion to strike simply because it contests an action or decision that was arrived at following speech or petitioning activity, or that was thereafter communicated by means of speech or petitioning activity."  *Id.* at 907.  "Rather, a

---

[2] As explained in more detail in Section III.B.2.b., below, it is not clear that Plaintiff's Complaint even properly attempts to plead an ADEA claim.

Case No. 17-CV-05285-LHK
ORDER GRANTING IN PART AND DENYING IN PART SPECIAL MOTION TO STRIKE AND GRANTING MOTION TO DISMISS

claim may be struck only if the speech or petitioning activity *itself* is the wrong complained of, and not just evidence of liability or a step leading to some different act for which liability is asserted." *Id.* Because *Park* is dispositive for many of the claims at issue in the anti-SLAPP motion, *Park* bears examining in some detail.

The plaintiff in *Park* was a tenure-track assistant professor and was of Korean national origin. *Id.* at 907. Park's application for tenure was denied, and he then brought several discrimination claims against the university. The university responded with an anti-SLAPP motion to strike. *Id.* The university argued that the suit arose from the university's decision to deny Park tenure and the numerous communications leading up to and following that decision, which the university argued were protected speech. The state trial court reasoned that the complaint was based on the university's decision to deny tenure as opposed to any protected communications, and so the trial court denied the anti-SLAPP motion to strike. *Id.*

The state Court of Appeal reversed. "The majority reasoned that although the gravamen of Park's complaint was the University's decision to deny him tenure, that decision necessarily rested on communications the University made in the course of arriving at that decision." *Id.* Because the tenure decisionmaking process was an official proceeding, the majority concluded that it was protected activity. The dissent argued "that all government action inevitably involves some form of communication, and courts must distinguish between instances when a claim challenges only the action itself and instances when a claim challenges the process that led to the action." *Id.*

The California Supreme Court granted review and reversed. The California Supreme Court instructed that "the defendant's act underlying the plaintiff's cause of action must *itself* have been an act in furtherance of the right of petition or free speech. [T]he mere fact that an action was filed after protected activity took place does not mean the action arose from that activity for the purposes of the anti-SLAPP statute." *Id.* at 908 (internal quotation marks and citations omitted). Rather, "in ruling on an anti-SLAPP motion, courts should consider the elements of the challenged claim and what actions by defendant supply those elements and consequently form the

basis for liability." *Id.*

The California Supreme Court also approvingly discussed a recent California Court of Appeal case, *Nam v. Regents of University of California*, 205 Cal. Rptr. 3d 687 (Ct. App. 2016). In *Nam*, a medical resident sued her university for sexual harassment, discrimination, and wrongful termination. The defendant's anti-SLAPP motion "contended the suit arose from communicated complaints about the plaintiff's performance, written warnings it issued her, an investigation it conducted, and the written notice to plaintiff of her termination." *Park*, 393 P.3d at 911. The California Court of Appeal held that the basis for the plaintiff's claims was not speech itself, but rather the university's alleged conduct. As the California Supreme Court noted, "[w]hat gives rise to liability is not that the defendant spoke, but that the defendant denied the plaintiff a benefit . . . on account of a discriminatory or retaliatory consideration." *Id.*

Indeed, as the California Supreme Court explained, interpreting the statute otherwise "would chill the resort to legitimate judicial oversight over potential abuses of legislative and administrative power." *Id.* (quoting *San Ramon Valley Fire Protection Dist. v. Contra Costa County Employees' Retirement Ass'n*, 22 Cal. Rptr. 3d 724 (Ct. App. 2004)). Specifically, "[a]ny employer who initiates an investigation of an employee, whether for lawful or unlawful motives, would be at liberty to claim that its conduct was protected and thereby shift the burden of proof to the employee who, without the benefit of discovery and with the threat of attorney fees looming, would be obligated to demonstrate the likelihood of prevailing on the merits." *Id.* (quoting *Nam*, 205 Cal. Rptr. 3d at 696).

The California Court of Appeal applied *Park* to a case with facts that are somewhat similar to the instant case in *Ku v. Dibaji*, 2017 WL 3205809 (Cal. Ct. App. July 28, 2017) (unpublished). In *Ku*, a professor was demoted after an investigation found that he violated the university's sexual harassment policies. The professor sued the university and the student for defamation, wrongful termination, breach of good faith and fair dealing, and intentional infliction of emotional distress. *Id.* at *1-2. The trial court granted defendants' anti-SLAPP motion after concluding that

all of the professor's claims were based on the complaint of sexual harassment and the alleged inadequate investigation of those claims. *Id.* at *2. The professor waived any objection to the trial court's ruling as to defamation, but the California Court of Appeal reversed as to the other causes of action. *Id.* at *4-5. Citing *Park* and *Nam*, the California Court of Appeal held that the thrust of the wrongful termination, breach of good faith and fair dealing, and intentional infliction of emotional distress causes of action were "based not on speech but on the university defendants' *actions*." *Id.* at *4.

Under *Park*, *Nam*, and *Ku*, it is clear that Defendants' anti-SLAPP motion to strike fails as to the wrongful discharge, breach of contract, and breach of the implied covenant of good faith and fair dealing causes of action. In each of these causes of action, the Defendants' alleged action that underpins Plaintiff's claim is the decision to suspend or discharge Plaintiff, not any protected speech. *See Park*, 393 P.3d at 907-11; *Nam*, 205 Cal. Rptr. 3d at 695-96; *Ku*, 2017 WL 3205809 at *4; Compl. ¶ 58 (wrongful discharge claim), ¶¶ 84, 86 (breach of contract claim), ¶ 91 (breach of covenant of good faith and fair dealing claim). Defendants' citations to caselaw for the proposition that all communications relating to and decisions arising out of an internal sexual harassment investigation are protected under the anti-SLAPP statute either predate *Park* or are distinguishable. Specifically, Defendants' citation to *Okorie v. Los Angeles Unified School District*, 222 Cal. Rptr. 3d 475 (Ct. App. 2017), is unavailing, as the Court of Appeal in that case specifically found that "in contrast to *Park*, the protected activity here *itself* is the wrong complained of." *Id.* at 490. For example, the *Okorie* plaintiff claimed that the school's communications with students' parents after his removal constituted harassment. *Id.* at 490. The same cannot be said of Plaintiff's wrongful discharge, breach of contract, or breach of the implied covenant of good faith and fair dealing causes of action. Accordingly, Defendant's special motion to strike is DENIED as to these claims.

However, Plaintiff's intentional infliction of emotional distress (IIED), negligent infliction of emotional distress (NIED), and defamation claims do arise out of protected speech because

United States District Court
Northern District of California

these claims are explicitly based on Defendants' allegedly false accusations of sexual assault, rather than the subsequent employment decision. *See* Compl. ¶ 74 (IIED claim alleging that Defendants' "treatment of Plaintiff Heineke by falsely accusing him of sexual harassment was extreme, outrageous and unreasonable"); ¶¶ 78-79 (NIED claim alleging that Defendants breached their duty to exercise ordinary care in dealing with Plaintiff, presumably based on same statements as IIED claim); ¶ 98 (defamation claim alleging that Defendants published to students and faculty the allegedly false accusations of sexual harassment). As a result, the burden shifts to Plaintiff to "demonstrate [his] claims have at least 'minimal merit.'" *Park*, 393 P.3d at 907 (quoting *Navellier v. Sletten*, 52 P.3d 703, 708 (Cal. 2002)).

Because an anti-SLAPP motion is brought so early in the proceedings, "the plaintiff's burden of establishing a probability of prevailing is not high." *Overstock.com, Inc. v. Gradient Analytics, Inc.*, 61 Cal. Rptr. 3d 29, 38 (Ct. App. 2007). "To withstand a special motion to strike, the plaintiff need only show a 'minimum level of legal sufficiency and triability,' or 'minimal merit.'" *Art of Living Found. v. Does 1-10*, 2012 WL 1565281, at *15 (N.D. Cal. May 1, 2012) (quoting *Mindys Cosmetics*, 611 F.3d at 598). "Put another way, the plaintiff must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." *Navellier*, 52 P.3d at 708 (quoting *Wilson v. Parker, Covert & Chidester*, 50 P.3d 733 (Cal. 2002)). "The court does not weigh evidence or resolve conflicting factual claims. . . . It accepts the plaintiff's evidence as true, and evaluates the defendant's showing only to determine if it defeats the plaintiff's claim as a matter of law." *Baral v. Schnitt*, 376 P.3d 604, 608 (Cal. 2016).

However, "averments on information and belief are insufficient." *Church of Scientology v. Wollersheim*, 49 Cal. Rptr. 2d 620, 636 (Ct. App. 1996), *overruled on other grounds by Equilon Enterprises v. Consumer Cause, Inc.*, 52 P.3d 685 (Cal. 2002). Rather, Plaintiff must support his claims with "competent admissible evidence within the personal knowledge of the declarant." *Id.* at 635; *see also Macias v. Hartwell*, 64 Cal. Rptr. 2d 222, 226 (Ct. App. 1997) ("Appellant had to

Case No. 17-CV-05285-LHK
ORDER GRANTING IN PART AND DENYING IN PART SPECIAL MOTION TO STRIKE AND GRANTING MOTION TO DISMISS

show, by competent and admissible evidence, that she would probably prevail on the defamation action."). If Plaintiff does not meet his burden, the Court must grant the special motion to strike. "In addition, since the statutory intent is to provide a quick, inexpensive method of dismissing SLAPP suits, leave to amend is improper." *Browne v. McCain*, 611 F. Supp. 2d 1062, 1068 (C.D. Cal. 2009) (citing *Simmons v. Allstate Ins. Co.*, 112 Cal. Rptr. 2d 397 (Ct. App. 2001)).

The Court first addresses Plaintiff's IIED and NIED causes of action against SCU, and then the Court addresses Plaintiff's IIED and NIED causes of action against Doe. Then, the Court addresses Plaintiff's defamation cause of action against both Defendants.

### 1. IIED and NIED Claims Against SCU

"California's Workers' Compensation Act provides an employee's exclusive remedy against his or her employer for injuries arising out of and in the course of employment." *Erhart v. BofI Holding, Inc.*, --- F.3d ---, 2017 WL 4005434, at *14 (S.D. Cal. Sept. 11, 2017) (quoting *Wright v. State*, 183 Cal. Rptr. 3d 135 (Ct. App. 2015)). Specifically, § 3600 of the California Labor Code states that "[l]iability for the compensation provided by this division, in lieu of any other liability whatsoever to any person . . . shall, without regard to negligence, exist against an employer for any injury sustained by his or her employees arising out of and in the course of the employment." The California Supreme Court has determined that this workers' compensation exclusivity rule applies "notwithstanding that the injury resulted from the intentional conduct of the employer, and even though the employer's conduct might be characterized as egregious." *Shoemaker v. Myers*, 801 P.2d 1054, 1062 (Cal. 1990). Moreover, the exclusivity rule applies even where the plaintiff does not allege that his emotional distress is disabling. *Livitsanos v. Superior Court*, 828 P.2d 1195, 1203 (Cal. 1992).

There are several exceptions to the exclusivity rule. First, the exclusivity rule does not apply where the employer's conduct "contravenes fundamental public policy." *Miklosy v. Regents of Univ. of Cal.*, 188 P.3d 629 (Cal. 2008). "Although this exception appears broad, the California Supreme Court has clarified that it 'is aimed at permitting a *Tameny* action to proceed despite the

14

workers' compensation exclusive remedy rule.'" *Erhart*, 2017 WL 4005434 at *15 (quoting *Miklosy*, 188 P.3d at 711). "A *Tameny* action is a common law tort claim for wrongful discharge in violation of public policy recognized in *Tameny v. Atlantic Richfield Co.*, 610 P.2d 1330 (1980)." *Erhart*, 2017 WL 4005434 at *15. "Thus, the 'public policy' exception to the exclusive remedy rule allows the employee to allege a *Tameny* action, but it does not allow the employee to also assert a distinct claim for intentional infliction of emotional distress." *Id.*; *see also Yau v. Santa Margarita Ford, Inc.*, 176 Cal. Rptr. 3d 824, 837 (Ct. App. 2014) (distinguishing cases that allowed IIED claims under the violation of public policy exception as predating *Miklosy*).

Second, the exclusivity rule does not apply if the employer's conduct "exceeds the risks inherent in the employment relationship." *Id.* (quoting *Miklosy*, 188 P.3d at 711). However, the California Supreme Court has held that workplace discipline, including termination, is inherent in the employment relationship, even when the employer's actions are intentional or egregious. *See Miklosy*, 188 P.3d at 645 (holding that whistleblower retaliation "occurred at the worksite, in the normal course of the employer-employee relationship, and therefore workers' compensation is plaintiffs' exclusive remedy for any injury that may have resulted"); *Cole v. Fair Oaks Fire Protection Dist.*, 729 P.2d 743, 751 (Cal. 1987) (holding that exclusivity rule applied where employer falsely accused employee of misconduct, subjected employee to a "kangaroo" disciplinary proceeding, publicly demoted him, gave him burdensome and menial duties, and filed an application to force him to retire involuntarily).

Here, Plaintiff's IIED and NIED claims are barred by the workers' compensation exclusivity rule. In the IIED cause of action, Plaintiff alleges that "SCU's treatment of Plaintiff Heineke by falsely accusing him of sexual harassment was extreme, outrageous and unreasonable." Compl. ¶ 74. However, SCU's investigation of Doe's sexual harassment allegation, SCU's adoption of the investigation's findings, and SCU's subsequent decision to suspend Plaintiff are precisely the sort of workplace discipline and employment decisions that the California Supreme Court has held are barred by the workers' compensation exclusivity rule. *See,*

United States District Court
Northern District of California

*e.g.*, *Shoemaker*, 801 P.2d at 1061-65.  Plaintiff's efforts to invoke the public policy exception to the exclusivity rule fail because, as explained above, the California Supreme Court has interpreted that exception narrowly to only encompass *Tameny* wrongful discharge actions.  *Miklosy*, 188 P.3d at 711.  Plaintiff's citation to cases that predate *Miklosy* do not compel a different result.  *See Yau*, 176 Cal. Rptr. 3d at 837 (distinguishing cases that allowed IIED claims under the violation of public policy exception as predating *Miklosy*).  Finally, Plaintiff's argument that the exclusivity rule does not apply because SCU's actions "infringe on a fundamental right such as freedom of speech (academic freedom), equal protection, freedom from age discrimination, [or] § 1983 due process" is unavailing.  Nowhere does the Complaint assert violations of freedom of speech or equal protection.  In addition, as explained below, Plaintiff fails to state a claim for age discrimination or a due process violation.  As such, Plaintiff's IIED and NIED claims against SCU are barred by the workers' compensation exclusivity rule.  As a result, Plaintiff has failed to carry his "burden of establishing a probability of prevailing" on his IIED and NIED claims against SCU.  *Overstock.com, Inc.*, 61 Cal. Rptr. 3d at 38; *see Comstock v. Aber*, 151 Cal. Rptr. 3d 589, 607 (Ct. App. 2012) ("[T]o defeat a SLAPP motion, [a plaintiff] must overcome substantive defenses.").  Defendants' special motion to strike is thus GRANTED with prejudice as to Plaintiff's IIED and NIED claims against SCU.

Although workers' compensation is the employee's exclusive remedy against the employer, workers' compensation "does not preclude suit by the employee against a negligent third party."  *O'Dell v. Freightliner Corp.*, 12 Cal. Rptr. 2d 774, 778 (Ct. App. 1992); *see also Kropp v. Cal. Highway Patrol*, 2011 WL 529669, at *6 (Cal. Ct. App. Feb. 14, 2011) ("There is nothing in the statutory scheme that allows a third party . . . to claim the workers' compensation exclusivity rule as a defense to a lawsuit.").  As a result, the Court must also analyze whether Plaintiff has carried his burden on his IIED and NIED claims against Defendant Doe.

United States District Court
Northern District of California

**2. IIED and NIED Claims Against Doe**

**a. IIED Claim Against Doe**

"A cause of action for intentional infliction of emotional distress exists where there is (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard for the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Hughes v. Pair*, 209 P.3d 963, 976 (Cal. 2009) (internal quotation marks omitted). "A defendant's conduct is 'outrageous' when it is so extreme as to exceed all bounds of that usually tolerated in a civilized community. And the defendant's conduct must be intended to inflict injury or engaged in with the realization that injury will result." *Id.* (internal quotation marks and citations omitted). "It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery." *Fowler v. Varian Assocs., Inc.*, 241 Cal. Rptr. 539, 545 (Ct. App. 1987).

"Severe emotional distress means emotional distress of such substantial quality or enduring quality that no reasonable [person] in civilized society should be expected to endure it," which the California Supreme Court has characterized as "a high bar." *Id.* (internal quotation marks omitted) (alteration in original). "Although emotional distress may consist of any highly unpleasant mental reaction such as fright, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, or worry, to make out a claim, the plaintiff must prove that emotional distress was *severe* and not trivial or transient." *Wong v. Tai Jing*, 117 Cal. Rptr. 3d 747, 766 (Ct. App. 2010). In *Wong*, for example, the California Court of Appeal held that the plaintiff's declaration that she had suffered from lost sleep, upset stomach, and generalized anxiety was not severe enough to prevail on an IIED claim. 117 Cal. Rptr. 3d at 767. Similarly, in *Hughes*, the California Supreme Court held that a plaintiff's allegation that she had "suffered discomfort, worry, anxiety, upset stomach, concern, and agitation" did not establish the type of severe emotional distress required to state an

IIED claim. 209 P.3d at 976-77. By contrast, in *Kelly-Zurian v. Wohl Shoe Co.*, 27 Cal. Rptr. 2d 457 (1994), the California Court of Appeal held that evidence of depression, insomnia, alcohol abuse, a diagnosis of post-traumatic stress disorder, and panic attacks consisting of anxiety, tightness in the chest, and heart palpitations, was sufficient. *Id.* at 463. In *Saari v. Jongordon Corp.*, 7 Cal. Rptr. 2d 82, 88 (Ct. App. 1992), which involved emotional distress claims based on the mishandling of the plaintiff's son's remains, the California Court of Appeal found that a plaintiff's testimony that she lay awake at night wondering what had happened to her son's remains and medical evidence that the plaintiff became depressed were enough to support a damages award for emotional distress.

In the instant case, accepting Plaintiff's evidence as true and without weighing competing evidence, as the Court must in an anti-SLAPP motion, Plaintiff has met his low burden to make a "prima facie showing of facts" to support his IIED claim as to Defendant Doe. First, Plaintiff alleges that Doe knowingly made false accusations of sexual harassment. Compl. ¶¶ 28, 32, 34, 36, 43, 48, 73-74. In his declarations, Plaintiff vigorously disputes Doe's allegations of sexual harassment and maintains that Doe falsely accused him. Heineke Decl. at ¶¶ 14, 15, 17, 19, 21, 22, 28; ECF No. 39-1 at 23 ¶¶ 3-4, 27 ¶ 14, 28 ¶ 15, 32 ¶ 19, 33 ¶¶ 20-21, 37 ¶ 25.

The California Court of Appeal has held that knowingly making false accusations of sexual harassment can satisfy the first element of an IIED claim, which requires extreme and outrageous conduct. For example, in *Moreno v. Ostly*, 2012 WL 3095344 (Cal. Ct. App. July 31, 2012), the California Court of Appeal held that a defendant's telling numerous people about an alleged sexual assault when the defendant knew the claims were false when she made them "was sufficiently egregious to satisfy the extreme and outrageous standard." *Id.* at *11. Similarly, in *Bozin v. AT&T Wireless Services, Inc.*, 2002 WL 1764166 (Cal. Ct. App. July 31, 2002), the California Court of Appeal observed that it was "reasonably possible" that "allegations that [a coworker] made false accusations of sexual misconduct against [the plaintiff] that were designed and intended to, and did, cause him humiliation, mental anguish and emotional and physical

18

distress" would state a claim for intentional infliction of emotional distress. *Id.* at *4. *Moreno* and *Bozin* are also consistent with California courts' holdings in other contexts that false accusations of child abuse or false reports to the police can constitute outrageous conduct for the purpose of an IIED claim. *See Siam v. Kizilbash*, 31 Cal. Rptr. 3d 368, 383-84 (Ct. App. 2005) (finding that knowingly making false reports of child abuse was sufficient to satisfy a plaintiff's anti-SLAPP burden on an IIED claim); *Jones v. Hirschberger*, 2002 WL 853858, at *6 (Cal. Ct. App. May 6, 2002) ("The threat to falsely report Mr. Jones to the police and the identification of Jones as a suspect when Mr. Hirschberger vandalized his own car could be found to be outrageous by a trier of fact."); *Begier v. Strom*, 54 Cal. Rptr. 2d 158, 161-63 (Ct. App. 1996) (reversing trial court's order granting demurrer of plaintiff's IIED claim based on false accusation of child abuse). Thus, accepting Plaintiff's evidence as true and without weighing competing evidence, Plaintiff has met his low burden to allege the first element of an IIED claim against Doe.

Next, as to Plaintiff's alleged severe emotional distress, Plaintiff alleges in the Complaint that he "has suffered from mental anguish, loss of sleep, loss of appetite, headaches, and a loss of companionship, society, and comfort." Compl. ¶¶ 71, 77, 82, 88. Plaintiff also alleges in the Complaint that he "suffered and continues to suffer severe emotional distress, mental anguish, indignation, wounded pride, shame, humiliation, loss of confidence and despair." *Id.* ¶ 76. Plaintiff's declaration accompanying the Complaint does not mention any emotional distress. *See* Heineke Decl. However, in a signed declaration filed in support of Plaintiff's second emergency motion for a preliminary injunction,[3] Plaintiff states that his suspension has caused him "great anxiety and loss of sleep." ECF No. 39-1 at 42. Plaintiff states that he "wake[s] up almost every night worrying about [his] students and [him]self" and worrying about "the shame and humiliation of being falsely charged and then suspended for something that didn't happen and that [he] didn't do." *Id.* at 42-43. Plaintiff states that he is "depressed" and that his depression is "deepening

---

[3] The declaration was originally submitted in support of Plaintiff's appeal to the Ninth Circuit of this Court's order denying Plaintiff's first emergency motion for a preliminary injunction.

Case No. 17-CV-05285-LHK
ORDER GRANTING IN PART AND DENYING IN PART SPECIAL MOTION TO STRIKE AND GRANTING MOTION TO DISMISS

every day." *Id.* at 43. Finally, Plaintiff states that being prevented from teaching is causing him "tremendous psychological and physical pain." *Id.* Whether Plaintiff's alleged emotional distress is sufficiently severe to state a claim for IIED is a close question. Given the level of emotional distress that the California Court of Appeal found sufficient in *Saari*, 7 Cal. Rptr. 2d at 88, however, the Court concludes that Plaintiff has carried his low burden of showing sufficient emotional distress to support his IIED claim at this stage.

Plaintiff has also sufficiently alleged that his emotional distress is proximately caused by Doe's allegedly false accusation of sexual harassment. Finally, although Plaintiff has not put forward any facts to support his claim that Doe intended to inflict emotional distress, his declarations reasonably support that Doe acted with reckless disregard for the probability of causing emotional distress. *See Hughes*, 209 P.3d at 976. Accordingly, Plaintiff has carried his low burden to show that his IIED claim has minimal merit for the purpose of surviving an anti-SLAPP motion unless one of Defendants' affirmative defenses applies. Defendants assert two types of privilege, which the Court addresses in turn.

### i. Common Interest Privilege Under California Civil Code § 47(c)

Defendants' first affirmative defense is that Doe's allegation of sexual harassment is privileged under California Civil Code § 47(c), which protects publication made "[i]n a communication, without malice, to a person interested therein, (1) by one who is also interested, or (2) by one who stands in such a relation to the person interested as to afford a reasonable ground for supposing the motive for the communication to be innocent, or (3) who is requested by the person interested to give the information." If a communication satisfies § 47(c), that communication is privileged and provides the defendant with an affirmative defense, "lost only if [the plaintiff] can show malice." *Comstock*, 151 Cal. Rptr. 3d at 607; *see also Cruey v. Gannett Co.*, 76 Cal. Rptr. 2d 670, 678 (Ct. App. 1998) (holding that complaints to employers about workplace harassment should be conditionally privileged subject to a showing of malice). "Courts have held that the malice required to vitiate the privilege of section 47(c) consists in either the

United States District Court
Northern District of California

*New York Times* standard of knowledge of falsity or reckless disregard for truth or the older common law standard of actual ill will." *Vackar v. Package Machinery Co.*, 841 F. Supp. 310, 314 (N.D. Cal. 1993); *see also Aghmane v. Bank of Am., N.A.*, 696 F. App'x 175, 176 (9th Cir. 2017) (unpublished) (same). "A defendant's recklessness or knowledge of falsity may be adduced 'by accumulation and by appropriate inferences.'" *Aghmane*, 696 F. App'x at 176-77 (quoting *Fisher v. Larsen*, 188 Cal. Rptr 216 (Ct. App. 1982)).

Section 47(c) "has been held to apply to '[c]ommunications made in a commercial setting relating to the conduct of an employee.'" *Said v. Regents of the Univ. of Cal.*, 2017 WL 963171, at *5 (Cal. Ct. App. Mar. 10, 2017) (quoting *Cuenca v. Safeway San Francisco Employees Fed. Credit Union*, 180 Cal. App. 3d 985, 995 (Ct. App. 1986)). Specifically, the § 47(c) privilege covers investigations by private employers of sexual harassment complaints when made without malice. *Bierbower v. FHP, Inc.*, 82 Cal. Rptr. 2d 393 (Ct. App. 1999). Thus, Doe's allegations of sexual harassment were privileged under § 47(c) unless Doe acted with malice. Accepting Plaintiff's evidence as true and recognizing that no discovery has yet been conducted, the Court concludes that Plaintiff's declaration has adequately alleged that Doe had knowledge of the falsity of her allegations. This is sufficient to defeat Doe's claim of privilege under § 47(c). *See Aghmane*, 696 F. App'x at 176-77.

### ii. Litigation Privilege Under California Civil Code § 47(b)

Defendants also argue that their communications about Doe's allegations of sexual harassment were absolutely privileged under California Civil Code § 47(b), which protects communication in connection with "any (1) legislative proceeding, (2) judicial proceeding, (3) in any other official proceeding authorized by law," subject to certain exceptions not applicable here. "The usual formulation is that the privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." *Silberg v. Anderson*, 786 P.2d 365, 369 (Cal. 1990). If applicable, § 47(b) provides a complete

United States District Court
Northern District of California

defense to all tort claims regardless of malice, with the exception that it does not protect against a malicious prosecution claim. *Butler v. McCain & Assocs.*, 2016 WL 1726018, at *4 (Cal. Ct. App. Apr. 27, 2016).

With regard to judicial proceedings, the § 47(b) privilege covers communications related to anticipated lawsuits, but such a lawsuit must have been "suggested or proposed, orally or in writing," must have been anticipated in good faith, and must have been imminent. *Edwards v. Centex Real Estate Corp.*, 61 Cal. Rptr. 2d 518, 530-31 (Ct. App. 1997). Here, Defendants do not contend that any lawsuit was proposed, anticipated in good faith, or imminent at the time of Doe's allegations or SCU's investigation. Relying on *Comstock*, 151 Cal. Rptr. 3d at 600, Defendants instead argue that the § 47(b) privilege "extends to statements made in preparation for or to prompt an investigation that may result in the initiation of official proceedings, including statements made during harassment investigations." Anti-SLAPP Mot. at 14. In *Comstock*, the plaintiff sued a coworker and her employer for claims arising out of sexual harassment. At issue was whether the plaintiff's reports of the harassment to the police, a nurse, and her employer were connected to a judicial or other official proceeding. The California Court of Appeal held that the plaintiff's reports were privileged under § 47(b). However, *Comstock* is distinguishable for two reasons. First, the investigation in *Comstock* included reports to the plaintiff's human resources manager of alleged sexual harassment. 151 Cal. Rptr. 3d at 600. The California Court of Appeal held that "the statements were necessary to address a commonly used affirmative defense in a sexual harassment case," in which the employer argues that the employee unreasonably failed to take advantage of corrective opportunities provided by the employer. *Id.* Thus, in anticipation of litigation, the plaintiff complained to her employer in order to neutralize a common defense. There is no such allegation that Doe contemplated litigation when she complained of the alleged harassment to SCU.

Second, the plaintiff in *Comstock* reported her allegations to the police, whose official duty it is to investigate such complaints, potentially in preparation for prosecution. *Id.* at 598. Here,

there is no allegation that Doe or SCU reported the sexual harassment allegations to the police or any other government agency. In order for the privilege to apply, then, a private university's internal investigation of sexual harassment allegations must constitute an "other official proceeding authorized by law" for the purpose of § 47(b).

However, in *Hackethal v. Weissbein*, 592 P.2d 1175 (Cal. 1979), the California Supreme Court held that the predecessor to § 47(b) was not intended to apply to non-governmental proceedings. *See id.* at 1179. The California legislature later amended § 47 to extend the privilege to nongovernmental proceedings reviewable by mandate. *Olaes v. Nationwide Mut. Ins. Co.*, 38 Cal. Rptr. 3d 467, 471 (Ct. App. 2006). Even after this amendment, California courts have refused to extend the privilege to cover non-governmental proceedings not reviewable by mandate, even when the body conducting the proceeding was highly regulated by statute. *See Slaughter v. Friedman*, 649 P.2d 886, 890 (Cal. 1982); *Cuenca*, 225 Cal. Rptr. at 857. Neither party has contended that SCU's investigation would be reviewable by a writ of mandate. Moreover, in *Olaes*, the California Court of Appeal relied on the California Supreme Court's interpretation of § 47(b)'s predecessor to conclude that a private company's sexual harassment investigation procedure is not an "other official proceeding," even though state law required the company to take reasonable steps to prevent harassment. *Olaes*, 38 Cal. Rptr. 3d at 472 ("Despite Nationwide's attempt to cast its sexual harassment procedure as a quasi-governmental proceeding, the procedure involved was designed and instituted by a private company."); *accord Carpenter v. Jack In The Box Corp.*, 2005 WL 950136, at *5-6 (Cal. Ct. App. Apr. 26, 2005) ("[T]he in-house investigation by Jack employees into the allegations of sexual harassment, cannot by any stretch of the imagination be considered an official proceeding authorized by law" as contemplated in the anti-SLAPP statute). In the instant case, SCU is a private university, as the Court discusses in more detail below, in Section III.B.1. As such, under *Hackethal*, *Slaughter*, and *Olaes*, SCU's internal investigation of sexual harassment allegations does not qualify as an "other official proceeding" for the purpose of the § 47(b) privilege. As a result, § 47(b) does not apply.

United States District Court
Northern District of California

Accordingly, Defendants' special motion to strike the IIED claim as to Doe is DENIED.

### b. NIED Claim Against Doe

"A claim of negligent infliction of emotional distress is not an independent tort but the tort of negligence to which the traditional elements of duty, breach of duty, causation, and damages apply." *Wong*, 117 Cal. Rptr. 3d at 767. The California Supreme Court has "made it clear that to recover damages for emotional distress on a claim of negligence where there is no accompanying personal, physical injury, the plaintiff must show that the emotional distress was 'serious.'" *Id.* (quoting *Molien v. Kaiser Foundation Hospitals*, 616 P.2d 813 (Cal. 1980)). The California Court of Appeal has interpreted "serious emotional distress" as "functionally the same" as the "severe emotional distress" required in an IIED claim. *Id.* at 768.

Plaintiff does not explain the basis for his allegation that Doe owed Plaintiff a duty of care. Compl. ¶ 79. In his opposition to the special motion to strike, Plaintiff only addresses SCU's duty of care. Plaintiff does not address Doe's duty. In its entirety, Plaintiff's defense of his NIED claim reads:

> As to Plaintiff's claim for negligent infliction of emotional distress, SCU contends that it was under no duty to avoid causing emotional distress. SCU is wrong.
>
> Damages for severe emotional distress are recoverable in a negligence action when they result from the breach of a duty owed the plaintiff <u>that is assumed by the defendant</u> or imposed on the defendant as a matter of law, or that arises out of a relationship between the two. <u>Marlene F. v. Affiliated Psychiatric Med. Clinic, Inc.</u>, 48 Cal. 3d 583, 590 (1989) (emphasis added). Here, SCU is in a position of power over Plaintiff and has a fiduciary tenured relationship of trust.

Anti-SLAPP Opp. at 19. Because Plaintiff has failed to establish that Doe owed him a duty of care, Plaintiff has not carried his burden to show a probability of success on his NIED claim against Doe. Accordingly, Defendants' special motion to strike is GRANTED with prejudice as to the NIED claim against Doe.

### 3. Defamation Claim Against Both Defendants

"Under California law, defamation 'involves the intentional publication of a statement of fact which is false, unprivileged, and has a natural tendency to injure or which causes special

24

damage.'" *Price v. Stossel*, 620 F.3d 992, 999 (9th Cir. 2010) (quoting *Gilbert v. Sykes*, 53 Cal. Rptr. 3d 752, 764 (Ct. App. 2007)). Only false statements of fact are generally actionable as defamation. Statements of opinion generally cannot support a defamation cause of action, although "a statement of opinion that implies a false assertion of fact" could be actionable. *Hawran v. Hixson*, 147 Cal. Rptr. 3d 88, 116 (Ct. App. 2012). "Whether a statement declares or implies a provably false assertion of fact is a question of law for the court to decide, unless the statement is susceptible of both an innocent and a libelous meaning, in which case the jury must decide how the statement was understood." *McGarry v. Univ. of San Diego*, 64 Cal. Rptr. 3d 467, 479 (Ct. App. 2007). "To determine whether a statement is actionable fact or nonactionable opinion, courts use a totality of the circumstances test of whether the statement in question communicates or implies a provably false statement of fact." *Id.* "[T]ruth is a complete defense to a defamation claim." *Hawran*, 147 Cal. Rptr. 3d at 119.

In addition, "[a] plaintiff cannot manufacture a defamation cause of action by publishing the statements to third persons; the publication must be done by the defendant." *Live Oak Publishing Co. v. Cohagan*, 286 Cal. Rptr. 198, 201 (Ct. App. 1991). However, there is a narrow exception to this rule when it is foreseeable that a defendant's act would result in publication to a third person. *Id.* Specifically, "where a derogatory statement is placed in a personnel file, the employee must explain the statement to subsequent employers, who will surely learn of it if they investigate his or her past employment." *Id.* at 202. Finally, a defamation cause of action is not barred by the workers' compensation exclusivity rule. *Shoemaker*, 801 P.2d at 1063 (citing *Howland v. Balma*, 192 Cal. Rptr. 286, 287-88 (Ct. App. 1983)).

Defendants argue that Plaintiff's defamation cause of action fails because the statements at issue were statements of opinion and were true. Anti-SLAPP Mot. at 18. However, it is clear that Doe's allegations contained assertions of fact and not statements of opinion. For example, SCU's investigation report stated that Doe accused Plaintiff of kissing her on the mouth, ECF No. 39-1 at 160, that Plaintiff hugged Doe so tightly that she could feel his erection pressed against her leg,

25

United States District Court
Northern District of California

*id.*, and that Plaintiff touched her knees and her legs, *id.* at 161. Doe told the investigator that Plaintiff asked Doe how many sexual partners she had had and whether Doe had ever had sex with a woman. *Id.* Doe also told the investigator that Plaintiff slid his hand into the back pocket of her pants and "squeezed her butt" on two occasions. *Id.* at 162. Doe told the investigator that Plaintiff slid his hand under Doe's shirt and put his hand on her bare back. *Id.* at 163. Each of these is a statement of fact, not of opinion. *Cf. Dickinson v. Cosby*, --- Cal. Rptr. 3d ---, 2017 WL 5589488, at *19-20 (Ct. App. Nov. 21, 2017) (holding that demand letter stating that rape allegations were false contained statements of fact).

Similarly, although SCU's investigative report contained a range of opinions, it also characterized Doe's allegations as facts and explicitly based its opinions on its finding that Doe's allegations were credible. *See, e.g.*, ECF No. 39-1 at 197-98 ("[T]he multiple instances of unwelcome physical conduct described by the Complainant—namely the Respondent having kissed her face and mouth, hugged her tightly enough that she felt his penis against her leg, put his hand in the back pocket of her pants and squeezed her butt . . .—satisfy each of the required elements for the finding of a violation of policy."). In addition, SCU officials explicitly adopted the findings of the investigation. *Id.* at 309. As such, Plaintiff has sufficiently identified statements of fact attributable to Doe and SCU that he alleges are defamatory.

As to Defendants' arguments that the statements were true, the Court again notes that in the second step of evaluating an anti-SLAPP motion, the Court must accept the Plaintiff's evidence as true and may not "weigh evidence or resolve conflicting factual claims." *See Baral*, 376 P.3d at 608. Plaintiff has submitted declarations unequivocally denying the factual allegations against him. In addition, Plaintiff's wife's declaration, in which his wife states that Plaintiff is physically incapable of an erection due to his treatment for prostate cancer, may contradict Doe's allegation that Doe felt Plaintiff's erection when Plaintiff hugged her. Montfort Decl. at ¶¶3-4. Plaintiff also has sufficiently alleged publication, as the allegations became part of his personnel record and he would necessarily need to publish the allegations in order to prove their falsity. *See*

United States District Court
Northern District of California

*Live Oak Publishing*, 286 Cal. Rptr. at 201. Finally, no privilege applies, as the Court has explained above. Accordingly, Plaintiff has carried his low burden of showing that his defamation claim has at least minimal merit. Defendants' special motion to strike is DENIED as to the defamation claim.

**B.      Motion to Dismiss**

The Court now analyzes Defendants' motion to dismiss. The Court first considers Plaintiff's due process claim and then the Court considers Plaintiff's ADEA claim. The Court then addresses Plaintiff's state law claims.

### 1.     § 1983 Claim for Substantive and Procedural Due Process Violations

"To state a claim for relief in an action brought under § 1983, [a plaintiff] must establish that [he] w[as] deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999). "Like the state-action requirement of the Fourteenth Amendment, the under-color-of-state-law element of § 1983 excludes from its reach 'merely private conduct, no matter how discriminatory or wrongful.'" *Id.* at 50 (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1002 (1982)). Thus, "[i]n order to recover under § 1983 for conduct by the defendant, a plaintiff must show 'that the conduct allegedly causing the deprivation of a federal right must be fairly attributable to the State." *Caviness v. Horizon Community Learning Center, Inc.*, 590 F.3d 806, 812 (9th Cir. 2010) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)).

"When addressing whether a private party acted under color of law, [the Court] therefore start[s] with the presumption that private conduct does not constitute governmental action." *See Sutton v. Providence St. Joseph Med. Center*, 192 F.3d 826, 835 (9th Cir. 1999). "Courts have used four different factors or tests to identify" when the presumption of private action is overcome and the private action can be attributed to the state: "(1) public function, (2) joint action, (3) governmental compulsion or coercion, and (4) governmental nexus." *Id.* at 835-36; *see also*

27

*Abordo v. Mobi PCS*, 684 F. App'x 631, 632 (9th Cir. 2017) (unpublished) (citing *Sutton*'s explanation of the four tests).

It is not clear from the conclusory allegations of the Complaint which theory of state action Plaintiff intends to invoke. In his Complaint, Plaintiff alleges that Doe is a former graduate student at SCU. Compl. ¶ 6. Plaintiff alleges that SCU is "a private Jesuit academic institution." Compl. ¶ 15. Directly contradicting his own allegation that SCU is a private institution, Plaintiff contends without further explanation that SCU "is an entity of the State of California." Compl. ¶ 5. Plaintiff alleges that SCU "is funded in part b[y] federal grants." Compl. ¶ 5; *see also id.* ¶ 69 (stating that SCU is a "partially federally funded institution"). Plaintiff also alleges that "[a]t all times material hereto, Defendants acted under color of state law." Compl. ¶ 8.

Defendants argue that Plaintiff has failed to state a § 1983 claim because Plaintiff has not adequately alleged state action. Mot. at 9-10. In opposition to the motion to dismiss, Plaintiff advances two arguments. First, Plaintiff contends that whether a party is a state actor is a factual determination, and thus resolution of this issue is premature on a motion to dismiss. Opp. at 11. Second, Plaintiff argues that SCU was acting under color of federal and state law because SCU's federal funding is contingent on its compliance with Title IX, and SCU's Gender-Based Discrimination and Sexual Misconduct Policy—the alleged violation of which is the basis for Plaintiff's dismissal—was created to maintain compliance with Title IX. *Id.* at 11-12. Both of these arguments fail. The Court addresses them in turn.

First, "[w]hether a private party engaged in state action is a highly factual question." *Brunette v. Humane Society of Ventura Cty.*, 294 F.3d 1205, 1209 (9th Cir. 2002). Even so, the Ninth Circuit has recognized that "a defendant is entitled to more than the bald legal conclusion that there was action under color of state law." *Price v. Hawaii*, 939 F.2d 702, 708 (9th Cir. 1991). In *Price*, for example, the plaintiff sued the State of Hawaii and a number of private parties for claims arising out of a dispute over a parcel of land. *Id.* at 705. Besides the private parties' seeking court approval for a land use plan, none of the allegations in the complaint "contain[ed] a

whisper of a suggestion" that the private parties acted with the State. *Id.* at 707. The district court dismissed the claims against the private parties pursuant to Rule 12(b)(6). *Id.* The Ninth Circuit acknowledged the fact-intensive nature of the state action inquiry and the "great liberality in federal pleading," but nonetheless affirmed the district court's dismissal because the complaint was so lacking. *Id.* at 707-08.

In the instant case, Plaintiff's Complaint offers little more than "the bald legal conclusion" that "[a]t all times material hereto, Defendants acted under color of state law." *Price*, 939 F.2d at 708; Compl. ¶ 8. The Court need not assume the truth of such a legal conclusion "merely because [it is] cast in the form of [a] factual allegation[]." *Fayer*, 649 F.3d at 1064. Moreover, the minimal fact that Plaintiff does plead—that SCU receives some unspecified amount of federal funding—does not by itself transform a private institution into a state actor. The United States Supreme Court has said that "[t]he Government may subsidize private entities without assuming constitutional responsibility for their actions." *S.F. Arts & Athletics, Inc. v. U.S. Olympic Committee*, 483 U.S. 522, 544 (1987) (citing *Blum*, 457 U.S. at 1011; *Rendell-Baker v. Kohn*, 457 U.S. 830, 840 (1982)). Other courts addressing this issue routinely hold that the receipt of government funds does not by itself transform a private actor into a state actor.

For example, in *Rendell-Baker*, former teachers and a former vocational counselor at a privately operated, mostly publicly funded, and publicly regulated high school brought a civil rights action against the high school in relation to their discharges. 457 U.S. at 831-33. The United States Supreme Court held that "the school's receipt of public funds does not make its discharge decisions acts of the State." *Id.* at 840. In coming to this conclusion, the United States Supreme Court analogized to its decision in *Blum*, where it held that nursing homes' dependence on government funding "did not make the acts of the physicians and nursing home administrators acts of the State." *Id.*

Similarly, in *Caviness*, the Ninth Circuit held that a privately run charter school was not a state actor for the purposes of § 1983 even though the school was publicly funded. 590 F.3d at

United States District Court
Northern District of California

808-09, 818. At least three other circuits that have considered similar arguments are in accord, as are other courts within this district. *See Faparusi v. Case W. Reserve Univ.*, --- F. App'x ---, 2017 WL 4417677, at \*5 (6th Cir. Oct. 4, 2017) (unpublished) ("[R]eceipt of federal funds alone[] does not convert private conduct to government or state action." (quoting *Doe v. Case W. Reserve Univ.*, No. 1:17 CV 414, 2017 WL 3840418, at \*9 (N.D. Ohio Sept. 1, 2017))); *Gross v. R.T. Reynolds, Inc.*, 487 F. App'x 711, 719 (3d Cir. 2012) (unpublished) ("[A] private entity does not become a state actor for the purpose of § 1983 simply because it is subject to state regulations or receives funding from the state."); *Grosvenor v. Des Moines Area Community College*, 980 F.2d 734, at \*2 (8th Cir. 1992) (unpublished) ("The Health Center's alleged funding and regulation are not dispositive either."); *Johnson v. Sutter Delta Med. Center*, No. C 11-03628 SI, 2011 WL 5444319, at \*2 (N.D. Cal. Nov. 9, 2011) ("[E]ven had plaintiff brought a § 1983 claim, she would need to provide some greater showing than simply alleging that defendant receives federal funding in order to sustain her claim that defendant acted under color of state law."); *Visintini v. Hayward*, No. C-08-5393 EMC, 2009 WL 2413356, at \*3 (N.D. Cal. Aug. 5, 2009) (stating that receipt of funds from Department of Housing and Urban Development does not alone make a landlord a state actor). Accordingly, the face of Plaintiff's Complaint does not plead state action sufficient to support Plaintiff's § 1983 claim.

Second, as to Plaintiff's argument that SCU acted under color of state law because its action was compelled by Title IX, this theory does not appear in the Complaint. It is well established that "[o]n a motion to dismiss, the Court only considers facts pled in the complaint." *Bagley v. City of Sunnyvale*, No. 16-CV-02250-LHK, 2017 WL 344998, at \*18 n.4 (N.D. Cal. Jan. 24, 2017). Thus, "the complaint may not be amended by briefs in opposition to a motion to dismiss." *Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1145 (N.D. Cal. 2010); *see also Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss."). Thus, the Court

Case No. 17-CV-05285-LHK
ORDER GRANTING IN PART AND DENYING IN PART SPECIAL MOTION TO STRIKE AND GRANTING MOTION TO DISMISS

GRANTS Defendants' motion to dismiss Plaintiff's § 1983 claim.

However, even if the Court were to consider Plaintiff's Title IX theory, the Court would still dismiss the § 1983 claim. Plaintiff argues that SCU's Gender-Based Discrimination and Sexual Misconduct Policy—the alleged violation of which is the basis for Plaintiff's dismissal—was created to maintain compliance with Title IX. Opp. at 12. Plaintiff also argues that SCU was obligated by law to conduct an investigation into Doe's complaint. *Id.* at 13. Plaintiff adds that SCU risks losing its federal funding if it does not comply with Title IX. *Id.* at 12-13. As a result, Plaintiff concludes that SCU's actions were compelled by federal and state law. However, Plaintiff does not contend that it was the mere fact that SCU conducted an investigation, as required by law, that deprived him of due process. Nor does Plaintiff allege that any state or federal law, including Title IX, compelled SCU to conduct the investigation in a certain way or come to any particular decision about his termination. Plaintiff's argument thus amounts to a contention that "a generally applicable statutory requirement, without more, . . . is sufficient to hold a private employer responsible as a governmental actor." *Sutton*, 192 F.3d at 837.

The Ninth Circuit already considered and rejected this argument in *Sutton*. *See id.* at 837-39. In *Sutton*, the plaintiff argued that a private medical center acted under color of state law when the medical center refused to hire him if he did not provide his social security number, as required by law. *Id.* at 829. The Ninth Circuit held that complying with a generally applicable law was not enough to transform a private entity into a state actor. It explained:

> To accept Plaintiff's argument would be to convert every employer—whether it has one employee or 1,000 employees—into a governmental actor every time it complies with a presumptively valid, generally applicable law, such as an environmental standard or a tax-withholding scheme. Private employers would then be forced to defend those laws and pay any consequent damages, even though they bear no real responsibility for the violation of rights arising from the enactment of the laws. "Statutes and laws regulate many forms of purely private activity, such as contractual relations and gifts, and subjecting all behavior that conforms to state law to the Fourteenth Amendment would emasculate the [government] action concept."

31

*Id.* at 838-39 (alteration in original) (quoting *Adams v. S. Cal. First Nat'l Bank*, 492 F.2d 324, 330-31 (9th Cir. 1974)). Moreover, the Ninth Circuit concluded that such an approach would be inconsistent with U.S. Supreme Court precedent. *Id.* at 839-41.

In addition, Plaintiff cites no on point authority for the proposition that a private university's compliance with Title IX transforms it into a state actor for the purpose of § 1983, and the Court is aware of none. *See Faparusi*, 2017 WL 4417677 at *5 ("Despite extensive research, the Court has not found a single case in which a court has determined that a private school's compliance with Title IX's regulations make that entity a state actor for purposes of a Fourteenth Amendment due process claim." (quoting *Doe v. Case Western Reserve University*, No. 1:17 CV 414, 2017 WL 3840418, at *10 (N.D. Ohio Sept. 1, 2017))). To the contrary, the Sixth Circuit recently rejected this exact argument. In *Faparusi*, the Sixth Circuit observed that alleging that a private university acted under color of state law by enforcing Title IX "by itself would ordinarily be insufficient under *Iqbal-Twombly* pleading standards." 2017 WL 4417677 at *5. The Sixth Circuit went on, "But even if we did Faparusi's work for him, it is hard to imagine how the argument would work. . . . [A] private entity taking action pursuant to a federal law does not thereby automatically become a state actor." *Id.* The Sixth Circuit then summarized *Doe*, 2017 WL 3840418, a recent case from the Northern District of Ohio. In *Doe*, the plaintiff argued that the private university's actions were coerced by the federal government because the university feared that its failure to take action would risk a loss of federal funds. The district court "rejected the argument because there was no evidence that the federal government participated in the proceedings against the plaintiff, or dictated the specific finding of responsibility in th[e] case." *Faparusi*, 2017 WL 4417677 at *5 (internal quotation marks omitted). The Sixth Circuit found *Doe*'s reasoning persuasive, as does this Court.

Accordingly, even if the Court considered the Title IX theory raised only in Plaintiff's Opposition, the Court would nevertheless grant Defendants' motion to dismiss the § 1983 claim. Because it is conceivable that Plaintiff may be able to plead state action under some other theory,

32

the § 1983 claim is dismissed as to Defendant SCU with leave to amend. However, because Plaintiff concedes in his Opposition that he did not intend to allege the § 1983 claim against Defendant Doe, *see* Opp. at 11, the § 1983 claim is dismissed as to Defendant Doe with prejudice.

### 2. ADEA Claim

#### a. Notice Requirement

The ADEA provides for private civil actions, but requires that the plaintiff first provide the Equal Employment Opportunity Commission notice of the plaintiff's claim. *See Albano v. Schering-Plough Corp.*, 912 F.2d 384, 385 (9th Cir. 1990) (referring to "the requirement that before filing an action for age discrimination a charge must first be brought before the Equal Employment Opportunity Commission ('EEOC')"). Specifically, 29 U.S.C. § 626(d)(1) states that "[n]o civil action may be commenced by an individual under this section until 60 days after a charge alleging unlawful discrimination has been filed with the Equal Employment Opportunity Commission." *See also* 29 C.F.R. § 1626.18(b) ("An aggrieved person whose claims are the subject of a timely pending charge may file a civil action at any time after 60 days have elapsed from the filing of the charge with the Commission . . . .").

Alternatively, in a state such as California that "has a law prohibiting discrimination in employment because of age and establishing or authorizing a State authority to grant or seek relief from such discriminatory practice," the plaintiff may satisfy the notice requirement by filing an age discrimination charge with the appropriate state agency. 29 U.S.C. § 633(b); *see also Jackson v. Cty. of Sacramento Dep't of Health & Human Servs.*, 2017 WL 4923297, at *5 (E.D. Cal. Oct. 31, 2017) (stating that filing a claim with California's Department of Fair Employment and Housing ("DFEH") would satisfy § 633(b)). This notice requirement, however, is distinct from a traditional exhaustion requirement—in other words, a plaintiff need not fully pursue an administrative claim with the EEOC or the analogous state agency in order to bring a claim in federal court. *See Bankston v. White*, 345 F.3d 768, 770 (9th Cir. 2003); *Blackman-Baham v. Kelly*, 2017 WL 679514, at *12 (N.D. Cal. Feb. 21, 2017). If a plaintiff files a federal suit without

United States District Court
Northern District of California

satisfying the notice requirement, the United States Supreme Court has stated that "[s]uspension of proceedings is preferable to dismissal with leave to refile." *Oscar Mayer & Co. v. Evans*, 441 U.S. 750, 765 n.13 (1979).

In the instant case, Plaintiff's Complaint does not allege that Plaintiff notified the EEOC or DFEH of his age discrimination claim. As a result, Defendants argue that the ADEA claim is subject to dismissal for failure to comply with the notice requirement. *See* Mot. at 20. Plaintiff concedes in his Opposition that he did not notify the EEOC of his claim before filing suit. Opp. at 23. However, Plaintiff states that he "is now informing the EEOC of his filing of this lawsuit." *Id.* As the Court explained above, Plaintiff may not add factual allegations to the Complaint by way of his opposition papers. *See Tietsworth*, 720 F. Supp. 2d at 1145. In any event, the proper remedy for failure to satisfy the notice requirement appears to be a stay, rather than dismissal. *See Oscar Mayer & Co.*, 441 U.S. at 765 n.13. As such, the Court must consider whether Plaintiff's ADEA claim must be dismissed for failure to state a claim under Rule 12(b)(6).

### b. Whether the Complaint States an ADEA Claim

With respect to the substance of an ADEA claim, the ADEA forbids "discharge[ing] any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1). "However, the statute specifically provides that it is not unlawful for an employer to base employment decisions on 'reasonable factors other than age,' or to discharge an individual 'for good cause.'" *Douglas v. Anderson*, 656 F.2d 528, 530-31 (9th Cir. 1981) (quoting 29 U.S.C. § 623(f)(1)). The United States Supreme Court has recognized two theories of employment discrimination in the context of the ADEA: disparate treatment and disparate impact. *See Smith v. City of Jackson, Miss.*, 544 U.S. 228, 233-240 (2005) (plurality opinion recognizing disparate impact theory under ADEA); *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 609 (1993) (recognizing disparate treatment theory). In a disparate treatment claim, the employer "treats some people less favorably than others because of their race, color, religion [or other protected characteristics.]" *Hazen Paper Co.*, 507 U.S. at 609 (alteration in original) (quoting *Teamsters v. United States*, 431 U.S. 324, 335-36, n.15

United States District Court
Northern District of California

(1977)).  Disparate impact claims, by contrast, "involve employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity."  *Id.* (quoting *Teamsters v. United States*, 431 U.S. 324, 335-36, n.15 (1977)).

"In a disparate treatment case, liability depends on whether the protected trait (under the ADEA, age) actually motivated the employer's decision."  *Id.* at 610; *Enlow v. Salem-Keizer Yellow Cab Co.*, 389 F.3d 802, 811 (9th Cir. 2004) (same).  In the absence of direct evidence of age discrimination, a plaintiff can establish a prima facie case of age discrimination using circumstantial evidence by showing that he was "(1) [a] member[] of the protected class (at least age 40); (2) performing [his] job[] satisfactorily; (3) discharged; and (4) replaced by [a] substantially younger employee[] with equal or inferior qualifications."  *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1281 (9th Cir. 2000).

If the plaintiff relies on circumstantial evidence of age discrimination, then the Court must apply the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *Enlow*, 389 F.3d at 812.  Under that framework, "if an employee presents prima facie circumstantial evidence of discrimination, the burden shifts to the employer to 'produc[e] evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason.'"  *Id.* (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000)).  If the employer meets its burden, the burden shifts back to the employee "to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but where a pretext for discrimination."  *Reeves*, 530 U.S. at 143.

Other courts in the Ninth Circuit have dismissed ADEA claims pursuant to Rule 12(b)(6) where the plaintiff fails to plead the elements of a prima facie claim of discrimination.  *See, e.g.*, *Stoklas v. Sun Community Federal Credit Union*, 2012 WL 3237716, at *3 (S.D. Cal. Aug. 7, 2012) (dismissing ADEA claim where plaintiff failed to allege that anyone replaced the plaintiff after the plaintiff was fired); *Hall v. Schumacher*, 2011 WL 1073177, at *2 (D. Nev. Mar. 21,

35

2011) (dismissing ADEA claim where plaintiff failed to allege that she was performing her job satisfactorily or that the people who were promoted instead of the plaintiff were younger than the plaintiff).

In the instant case, as an initial matter, it is not even clear that Plaintiff has attempted to allege an ADEA claim. The caption of the Complaint lists the second cause of action as "ADEA Violations (29 U.S.C. § 631 et seq.)" and the Complaint invokes federal jurisdiction based in part on the ADEA. *See* Compl. ¶ 1. However, the body of the Complaint does not contain an ADEA cause of action. Rather, the body of the Complaint only contains a wrongful discharge cause of action that mentions age discrimination in passing. *See* Compl. ¶¶ 57-61.

Even setting this anomaly in pleading aside, the Complaint contains only conclusory allegations that SCU discriminated against Plaintiff based on his age. In the first paragraph of the Complaint, Plaintiff states that SCU threatened "to suspend and/or terminate Plaintiff from his tenured position as a professor at SCU due to his being 79 years old." Compl. ¶ 1. In paragraph 55, Plaintiff asserts that he "believes and will prove the real reason SCU is seeking to suspend or terminate him is age discrimination in order to avoid paying his tenured salary." Compl. ¶ 55. In paragraph 61, Plaintiff alleges that "SCU's failure to follow its policies as well as state and federal law was done with malice or with reckless indifference to Plaintiff Heineke's federally protected rights and was done to discriminate against him because of his age – he is 79 years old." Compl. ¶ 61. Finally, in a declaration that was not signed but which Plaintiff swore was correct in an attached email, Plaintiff stated that he is 79 years old. Heineke Decl. ¶ 1. In addition, Plaintiff states that he is "informed and believe[s] that the SCU Business School is seeking to save money and that firing [him], a tenured professor, is a way for SCU to save $100,000/year by replacing [him] with an untenured or adjunct professor." *Id.* ¶ 31. Plaintiff added that he believes that "the sexual harassment accusation is being used as a pretext to fire [him] because of [his] age and high compensation, so SCU can save money." *Id.*

These allegations fail to sufficiently plead an ADEA violation. Aside from reciting that

Case No. 17-CV-05285-LHK
ORDER GRANTING IN PART AND DENYING IN PART SPECIAL MOTION TO STRIKE AND GRANTING MOTION TO DISMISS

Plaintiff is 79 years old, Plaintiff does not allege any direct indication that he was fired because of his age. As a result, Plaintiff instead must establish a prima facie case of discriminatory intent using circumstantial evidence, but the Complaint falls short here, too. Specifically, Plaintiff does not allege that he was replaced with "a substantially younger employee[] with equal or inferior qualifications." *Coleman*, 232 F.3d at 1281. Instead, Plaintiff alleges that SCU would seek to replace him with "an untenured or adjunct professor." Heineke Decl. ¶ 31.

In his Opposition, Plaintiff attempts to conflate the age of any replacement with tenure status and salary. For example, Plaintiff states that he has alleged that SCU used the sexual harassment allegations "as a pretext . . . to terminate Professor Heineke, a 79-year old tenured professor and replace him with a younger, cheaper, adjunct professor, and SCU admits it has done so." MTD Opp. at 12 (internal citations omitted); *see also id.* at 16 (repeating assertion that Plaintiff has alleged his replacement is "a younger, cheaper adjunct professor"). Plaintiff misstates the record, and the Court cautions Plaintiff to take greater care in characterizing the record in the future. Neither the Complaint nor Plaintiff's declaration allege that any replacement for Plaintiff will be younger than Plaintiff. As stated above, paragraph 31 of Plaintiff's declaration, upon which Plaintiff relies here, only states that his replacement would be untenured and paid less. It does not state that any replacement would be younger. Moreover, although the Court limits its review on a motion to dismiss to the facts alleged in the Complaint and any judicially noticeable facts, the Court notes that Plaintiff's other declarations similarly lack any allegations as to the replacement's age. *See* ECF No. 19 ¶ 3 (separate Plaintiff declaration making same claim about salary and tenure status of replacement but failing to mention age); ECF No. 39-1 at 42 ¶ 37 (separate Plaintiff declaration identifying replacement as adjunct professor without mentioning the adjunct professor's age). Similarly, the Chacko declaration states only that tenured professors "are paid substantially more than adjunct professors." ECF No. 21 ¶ 3. Moreover, the Guthrie declaration, which Plaintiff cites for the proposition that SCU has admitted to hiring a younger replacement, does not mention the age of any replacement. It says: "SCU has already

made arrangements to have another faculty member cover Plaintiff's courses and changing that at this time will cost SCU money and will inconvenience the students and faculty scheduled to teach Plaintiff's courses." ECF No. 17-1 ¶ 10.

While tenure status or salary may be correlated with age, alleging that an employment decision was made based on a separate characteristic that correlates with age is not sufficient to state an ADEA claim, as the following decisions of the United States Supreme Court and Ninth Circuit demonstrate. In *Hazen Paper Co.*, the United States Supreme Court addressed "whether an employer violates the ADEA by acting on the basis of a factor, such as an employee's pension status or seniority, that is empirically correlated with age." 507 U.S. at 608. The United States Supreme Court explained that "[i]t is the very essence of age discrimination for an older employee to be fired because the employer believes that productivity and competence decline with old age." *Id.* at 610. "Congress' promulgation of the ADEA was prompted by its concern that older workers were being deprived of employment on the basis of inaccurate and stigmatizing stereotypes." *Id.* The United States Supreme Court noted, however, that "[w]hen the employer's decision is wholly motivated by factors other than age, the problem of inaccurate and stigmatizing stereotypes disappears. This is true even if the motivating factor is correlated with age, as pension status typically is." *Id.* at 611.

With regard to an employee's years of service, for example, the United States Supreme Court explained that "an employee's age is analytically distinct from his years of service," even though age and years of service may often be correlated. *Id.* "An employee who is younger than 40, and therefore outside the class of older workers as defined by the ADEA, may have worked for a particular employer his entire career, while an older worker may have been newly hired. Because age and years of service are analytically distinct, . . . it is incorrect to say that a decision based on years of service is necessarily 'age based.'" *Id.* (internal citation omitted). As a result, a decision to fire an older employee solely because he had enough years of service to be close to vesting his pension benefits would not constitute discriminatory treatment on the basis of age.

Case No. 17-CV-05285-LHK
ORDER GRANTING IN PART AND DENYING IN PART SPECIAL MOTION TO STRIKE AND GRANTING MOTION TO DISMISS

The United States Supreme Court explained, "The prohibited stereotype ('Older employees are likely to be ___') would not have figured in this decision, and the attendant stigma would not ensue." *Id.* at 612. The United States Supreme Court noted that such an action may not be legal, "[b]ut it would not, without more, violate the ADEA." *Id.*

The Ninth Circuit applied *Hazen Paper Co.* in *Turney v. Beltservice Corp.*, 92 F.3d 1194 (9th Cir. 1996) (unpublished). In *Turney*, the plaintiff argued that he was terminated because of his high salary, which was related to his age, and that his replacement "represented younger, cheaper labor to the company." *Id.* at *2. The Ninth Circuit concluded that *Hazen Paper Co.* controlled because "the motivating factor for terminating Turney appears to be one which is related to, but not the same as, his age." *Id.*; *see also Flynn v. Portland General Elec. Co.*, 958 F.2d 377, at *7 (9th Cir. 1992) (unpublished) ("A desire to cut costs does not necessarily equate with an intent to discriminate on the basis of age . . . .").

As a result, in the instant case, not only has Plaintiff failed to plead that he was replaced with a substantially younger employee, but Plaintiff has also pled facts that, when accepted as true, as the Court must on a motion to dismiss, "establish that he cannot prevail on his . . . claim." *Weisbuch*, 119 F.3d at 783 n.1 (quoting *Warzon*, 60 F.3d at 1239). Specifically, Plaintiff has pled that the motivating factor in SCU's decision to suspend him was a desire to cut costs by replacing Plaintiff, a tenured, highly paid professor, with an untenured, lower-paid professor. While tenure status and salary may often relate to age, they are not the same as age.[4] *See Hazen Paper Co.*, 507 U.S. at 612; *Turney*, 92 F.3d 1194, at *2.

As such, Plaintiff has failed to state a claim for an ADEA violation. Defendants' motion to dismiss is thus GRANTED as to the ADEA cause of action, to the extent that the Complaint

---

[4] These same allegations about tenure status and salary also suggest that even if Plaintiff can amend the Complaint to allege that his replacement was substantially younger than Plaintiff, Plaintiff will face difficulty in showing that his age—as opposed to his salary or the allegations of sexual harassment—were the motivating reason for his discharge. *See Hazen Paper Co.*, 507 U.S. at 610. Similarly, Plaintiff's tenure status and salary allegations are likely to pose a challenge to his ability to carry his burden to show pretext if the burden shifts back to him under the *McDonnell Douglas* framework.

Case No. 17-CV-05285-LHK
ORDER GRANTING IN PART AND DENYING IN PART SPECIAL MOTION TO STRIKE AND GRANTING MOTION TO DISMISS

pleads one. Because it is conceivable that Plaintiff could amend the Complaint to allege either direct evidence of age discrimination or establish a prima facie case using circumstantial evidence, the Court grants Plaintiff leave to amend as to Defendant SCU. Because an ADEA claim is not available against an individual defendant, *Miller v. Maxwell's Int'l*, 991 F.2d 583, 588-89 (1993), and because Plaintiff acknowledges that he did not intend to allege an ADEA claim against to Defendant Doe, Opp. at 24, the dismissal of the ADEA claim is with prejudice as to Defendant Doe.

### 3. State Law Claims

After the Court's rulings on the anti-SLAPP special motion to strike and the dismissal of Plaintiff's § 1983 and ADEA causes of action, five causes of action remain: wrongful discharge, IIED (against Doe only), breach of contract, breach of the implied covenant of good faith and fair dealing, and defamation. All of these remaining causes of action are based on state law. A federal court may exercise supplemental jurisdiction over state law claims "that are so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Conversely, a court may decline to exercise supplemental jurisdiction where it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3); *see also Albingia Versicherungs A.G. v. Schenker Int'l, Inc.*, 344 F.3d 931, 937-38 (9th Cir. 2003) (as amended) (holding that Section 1367(c) grants federal courts the discretion to dismiss state law claims when all federal claims have been dismissed). In considering whether to retain supplemental jurisdiction, a court should consider factors such as "economy, convenience, fairness, and comity." *Acri v. Varian Assocs.*, 114 F.3d 999, 1001 (9th Cir. 1997) (en banc) (citations and internal quotation marks omitted). However, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state law claims." *Exec. Software N. Am., Inc. v. U.S. Dist. Court*, 24 F.3d 1545, 1553 n.4 (9th Cir. 1994) (emphasis omitted), *overruled on other grounds by Cal. Dep't of Water Res. v. Powerex Corp.*, 533 F.3d 1087 (9th Cir. 2008).

40

United States District Court
Northern District of California

Here, the factors of economy, convenience, fairness, and comity support dismissal of Plaintiff's remaining state law theories of relief. This case is still at the pleading stage, and no discovery has taken place. Federal judicial resources are conserved by dismissing the state law theories of relief at this stage. The Court finds that dismissal promotes comity as it enables California courts to interpret questions of state law. For these reasons, the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law theories of relief. Accordingly, the motion to dismiss is GRANTED as to the state law claims with leave to amend. *See Sikhs for Justice "SFJ", Inc. v. Facebook, Inc.*, 144 F. Supp. 3d 1088, 1097 (N.D. Cal. 2015) (dismissing without prejudice the claims over which the court declined to exercise supplemental jurisdiction).

## C.    The Court's Previous Order that Jane Doe May Proceed Under Pseudonym

In an order on November 16, 2017, the Court granted Defendants' administrative motion to allow Doe to proceed under pseudonym and to seal the filings containing Doe's true name. ECF No. 54. Because the Court issued this order on the evening before the planned evidentiary hearing on Plaintiff's second emergency motion for a preliminary injunction,[5] the Court did not have time to issue a detailed order. As a result, the Court now provides its reasoning for granting the administrative motion.

"A district court has discretion in deciding whether to permit a party to proceed anonymously." *Advanced Textile*, 214 F.3d at 1067, 1068. The Court must balance the party's need for anonymity with the prejudice to the opposing party and the public's interest in knowing the party's identity. *Id.* at 1068. "In general, 'compelling reasons' sufficient to outweigh the public's interest in disclosure and justify sealing court records exist when such 'court files might have become a vehicle for improper purposes,' such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets." *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006). With regard to allegations of sexual

---

[5] After granting the administrative motion, the Court decided to vacate the hearing. *See* ECF No. 55.

41

United States District Court
Northern District of California

assault or sexual harassment in particular, courts in the Ninth Circuit have found that allowing victims to proceed anonymously serves a strong public interest "in protecting the identities of sexual assault victims so that other victims will not be deterred from reporting such crimes." *See Doe v. Penzato*, No. CV10-5154, 2011 WL 1833007, at *5 (N.D. Cal. May 13, 2011); *R.P. v. Seattle School Dist.*, 2014 WL 639408, at *1 (W.D. Wash. Feb. 18, 2014); *cf. Jordan v. Gardner*, 986 F.2d 1521, 1525 n.4 (1993) ("In keeping with the tradition of not revealing names of the victims of sexual assault, we use initials here to protect the privacy of the inmates."). In *EEOC v. ABM Industries, Inc.*, 249 F.R.D. 588, 592 (E.D. Cal. 2008), for example, a court permitted plaintiffs to intervene anonymously in part because "[t]hey [we]re concerned that they w[ould] be embarrassed by the public disclosure of the nature of their allegations against Defendants, which, if proven, will identify them as victims of sexual harassment and sexual crimes in the small community where they live and work."

Defendants argued that Doe's need for anonymity outweighed any potential prejudice to Plaintiff and the public's interest in knowing her identity. ECF No. 71 at 3. Defendants alleged that Plaintiff brought this lawsuit for the purpose of embarrassing and intimidating Doe. *Id.* at 1. Defendants argued that Plaintiff included in the Complaint private information about Doe's performance in his course as well as the sensitive allegations that she privately made in a confidential university investigation. *Id.* at 3-4. Defendants argued that Plaintiff would suffer no prejudice as a result of allowing Doe to proceed anonymously because Plaintiff already knows Doe's identity. *Id.* at 5. Finally, Defendants argued that the public's interest weighed in favor of allowing Doe to proceed anonymously, to prevent other victims of sexual harassment and assault from being deterred from reporting such behavior. *Id.* at 3.

Plaintiff opposed Defendants' administrative motion.[6] ECF No. 33. Plaintiff argued that

---

[6] The Court notes that Plaintiff's opposition was seven pages long. The Local Civil Rules limit the length of an opposition to an administrative motion to five pages. *See* Local Civ. R. 7-11(b). As such, Plaintiff's opposition is subject to being stricken for failure to comply with the Local Rules. Nevertheless, the Court fully considered Plaintiff's arguments. The Court reminds Plaintiff to comply with the Local Rules.

Case No. 17-CV-05285-LHK
ORDER GRANTING IN PART AND DENYING IN PART SPECIAL MOTION TO STRIKE AND GRANTING MOTION TO DISMISS

Doe had not identified what harm she would suffer if made to proceed in her true name. *Id.* at 2-3.

Plaintiff argued that sexual harassment victims, as opposed to sexual assault victims, are not

typically allowed to proceed anonymously. For this proposition, Plaintiff relied on a number of

out-of-circuit cases where the victim seeking to proceed anonymously was the plaintiff. *See id.* at

1. Plaintiff also claims that he "has the right to attack her credibility in public rather than her

hiding behind a cloak of secrecy." *Id.* at 3. Finally, Plaintiff claims that he "has the right to

defend himself publicly, where there is a greater incentive for truthful testimony. [Doe], as the

accuser, has to proceed publicly so that other presently unknown witnesses may learn that it is she

who has made these accusations and may come forward to provide information or evidence

helpful to Professor Heineke." *Id.* at 4.

The Court found that in the circumstances of this case, Doe's interest in proceeding

anonymously outweighed any potential prejudice to Plaintiff. First, unlike the cases that Plaintiff

relied upon, Doe is not the plaintiff in this case. She is not the one who has chosen to avail herself

of the public forum of the Court. *See North Jersey Media Grp. Inc. v. Doe Nos. 1-5*, 2012 WL

5899331, at *4 (S.D.N.Y. Nov. 26, 2012) ("The problem of anonymous plaintiffs involves

considerations entirely different from those involving 'John Doe' defendants.").[7] Second, there is

no prejudice that would result to Plaintiff as a result of allowing Doe to proceed anonymously.

"This is especially true when [Plaintiff] knows [Doe]'s true identi[t]y (as evidenced by the

repeated use of her name in the moving papers)." *R.P.*, 2014 WL 639408, at *2. Third, Plaintiff's

assertion that exposure to the public is what incentivizes witnesses in court to tell the truth is

contradicted by Plaintiff's many filings in this Court, which focus on the importance of testifying

---

[7] The Court disagrees with Plaintiff's assertion that the *Advanced Textile* retaliation analysis applies here. That retaliation analysis more naturally applies when a plaintiff fears retaliation in response to bringing a lawsuit. Here, Doe does not argue that she fears retaliation in response to the suit; she argues that the suit *itself*, and the related public exposure, is meant to publicly embarrass her. *See Doe v. County of El Dorado*, No. 2:13-CV-01433-KJM, 2013 WL 6230342, at *2 (E.D. Cal. Dec. 2, 2013) (explaining that in cases where *Advanced Textile* retaliation analysis applied, "plaintiffs feared retaliation because of their suit"); *Dep't of Fair Emp't & Hous. v. Law Sch. Admission Council, Inc.*, No. C-12-1830 EMC, 2012 WL 3583023, at *2-3 (N.D. Cal. Aug. 20, 2012) (omitting *Advanced Textile* retaliation analysis where feared harm was not retaliatory).

Case No. 17-CV-05285-LHK
ORDER GRANTING IN PART AND DENYING IN PART SPECIAL MOTION TO STRIKE AND GRANTING
MOTION TO DISMISS

United States District Court
Northern District of California

under penalty of perjury, not the importance of public testimony. *See, e.g.*, Heineke Decl. ¶ 26 ("I should be afforded the opportunity to show, if necessary, in court (where [Doe] will have to prove, under oath with substantial credible evidence, and sworn testimony from witnesses who are cross-examined) that I did not sexually harass her."). Fourth, because the Court ordered the parties to refile all documents containing Doe's true name with her name removed, all the "filings in the case [will be] available for public review." *R.P.*, 2014 WL 639408, at *2. Fifth, the Court concludes that the public interest is served in allowing an alleged victim of sexual harassment to be sued under pseudonym to avoid deterring other victims from coming forward.[8] As a result, the Court granted Defendants' administrative motion, sealed documents with references to Doe's true name, and ordered the parties to refile these documents without Doe's true name.

## IV. CONCLUSION

For the foregoing reasons, Defendants' special motion to strike is GRANTED IN PART and DENIED IN PART as follows:

- Defendants' special motion to strike is GRANTED with prejudice as to Plaintiff's IIED claim against SCU and Plaintiff's NIED claims against SCU and Doe.
- Defendants' special motion to strike is DENIED as to Plaintiff's § 1983, ADEA, wrongful discharge, breach of contract, breach of the implied covenant of good faith and fair dealing, and defamation claims against SCU and Doe, as well as the IIED claim against Doe.

Defendants' motion to dismiss the complaint in its entirety is GRANTED as follows:

- The § 1983 and ADEA claims are dismissed with prejudice as to Doe.
- The § 1983 and ADEA claims are dismissed with leave to amend as to SCU. If

---

[8] Plaintiff's opposition to the administrative motion to proceed under pseudonym unnecessarily inserted Doe's true name in the title of the opposition. Specifically, the administrative motion was titled "Defendants' Motion for Administrative Relief to Proceed Under Pseudonym, and Seal Records Referencing the Named Student." ECF No. 71. Plaintiff's opposition goes out of its way to use Doe's true name in its title: "Plaintiff's Memorandum in Opposition to Defendant [Jane Doe's True Name]'s Motion for Administrative Relief to Proceed Under a Pseudonym." ECF No. 33.

United States District Court
Northern District of California

1    Plaintiff chooses to amend the § 1983 and ADEA claims, he must file an amended

2    complaint within 60 days.

3    • The Court declined to exercise supplemental jurisdiction over the remaining state

4    law claims. As such, if Plaintiff chooses to amend his § 1983 and ADEA claims,

5    he may reassert the wrongful discharge, breach of contract, breach of the implied

6    covenant of good faith and fair dealing, and defamation claims, as well as the IIED

7    claim against Doe.

8    • If Plaintiff chooses not to amend the § 1983 or ADEA claims, the wrongful

9    discharge, breach of contract, breach of the implied covenant of good faith and fair

10    dealing, and defamation claims, as well as the IIED claim against Doe are

11    dismissed without prejudice to refiling these claims in state court.

12    If Plaintiff fails to file an amended complaint within 60 days or fails to cure the § 1983 and

13 ADEA deficiencies identified in this order, those claims will be dismissed with prejudice.

14 Plaintiff may not add new causes of action or new parties without a stipulation or leave of the

15 Court.

16 **IT IS SO ORDERED.**

17

18 Dated: December 5, 2017

19

*Lucy H. Koh*

20 LUCY H. KOH
United States District Judge

21

22

23

24

25

26

27

45

28